# In the United States Court of Federal Claims

Nos. 20-575C and 20-609C (Consolidated)
(Filed Under Seal:  December 18, 2020)
(Reissued for Publication:  January 21, 2021)[*]

```
*****************************************
SYSTEM STUDIES & SIMULATION,              *
INC. and L3 DOSS AVIATION, INC.,          *
                                          *
          Plaintiffs,                     *
                                          *
     v.                                   *
                                          *
THE UNITED STATES,                        *
                                          *
          Defendant,                      *
                                          *
     and                                  *
                                          *
CAE USA INC.,                             *
                                          *
          Defendant-Intervenor.           *
*****************************************
```

Postaward Bid Protest; Motions for
Reconsideration; Prejudice; Best Value
Tradeoff Analysis; Extrarecord Evidence

Walter B. English, Huntsville, AL, and Kevin P. Mullen, Washington, DC, for plaintiffs.

Evan Wisser, United States Department of Justice, Washington, DC, for defendant.

Alexander B. Ginsberg, McLean, VA, for defendant-intervenor.

## OPINION AND ORDER

**SWEENEY**, Senior Judge

Plaintiffs System Studies & Simulation, Inc. ("S3") and L3 Doss Aviation, Inc. ("L3 Doss") move for reconsideration of the court's October 28, 2020 Opinion and Order denying plaintiffs' motions for judgment on the administrative record and dismissing plaintiffs' protests ("MJAR Ruling").  Plaintiffs maintain that the United States Department of the Army, Mission and Installation Contracting Command ("the Agency") improperly awarded a contract for advanced helicopter flight training support ("AHFTS") to defendant-intervenor CAE USA Inc. ("CAE").  In their motions for reconsideration, plaintiffs assert that the MJAR Ruling contains

---

[*] This reissued Opinion and Order incorporates the agreed-to redactions proposed by the parties on January 19, 2021.  The redactions are indicated with bracketed ellipses ("[. . .]").

manifest errors of law and fact, and that reconsideration is necessary to prevent manifest injustice.  For the reasons discussed below, the court denies plaintiffs' motions.

# I.   BACKGROUND

## A.   The Solicitation and Initial Evaluation of Proposals

The Agency issued solicitation W9124G-18-R-0009 on June 25, 2018, to acquire AHFTS for the United States Army Aviation Center of Excellence ("USAACE") at Fort Rucker, Alabama.[1]  Administrative R. ("AR") 244, 256.  The Agency would award a single firm-fixed-price contract for a thirty-day phase-in period, an eleven-month base period, and six one-year option periods.  Id. at 144.  Section M of the solicitation described how the Agency planned to evaluate the proposals.  Id. at 588-95.  With respect to the substance of the evaluations, the Agency stated that it intended to award the contract to the offeror "whose proposal represents the best value after evaluation in accordance with the factors in the solicitation by utilizing the trade-off process."  Id. at 588.  The solicitation outlined five such factors:  (1) technical capability, (2) staffing and management approach, (3) past performance, (4) small business participation, and (5) price.  Id.  The relative importance of the factors was described as follows:

> Factor 1 (Technical Capability) and Factor 2 (Staffing and Management Approach) are of equal importance and are more importan[t] tha[n] all other non-price factors.  Factor 3 (Past Performance) is more important than Factor 4 (Small Business Participation).  In accordance with [Federal Acquisition Regulation ("FAR")] 15.304(e)(2), all non-price factors combined are significantly more important than Factor 5 (Price).

Id.  [. . .] offerors submitted timely proposals for this solicitation, leading the Agency to establish a competitive range and initiate discussions with four of them:  CAE, [. . .], S3, and L3 Doss.  Id. at 3616.  The Source Selection Authority ("SSA") ultimately awarded the contract to L3 Doss.  Id. at 4464-65.

S3 filed its initial bid protest on October 1, 2019.[2]  See generally Sys. Studies & Simulation, Inc. v. United States, 146 Fed. Cl. 186 (2019).  The court rejected S3's assertions that it was prejudiced by the Agency's staffing evaluation and that the Agency's past performance evaluation was unreasonable.  Id. at 200-01.  However, the court agreed with S3 that the Agency failed to engage in a proper tradeoff analysis and effectively converted the acquisition to a lowest price technically acceptable procurement—an error that prejudiced S3.  Id. at 201-02.  The court thus enjoined the Agency from proceeding with contract performance

---

[1]  A detailed description of the underlying facts and the parties' dispute is provided in the court's MJAR Ruling and will not be repeated in full here.

[2]  L3 Doss intervened in this protest, as the awardee at the time, but did not file briefs or participate in oral argument.

and ordered the Agency to "reevaluate the proposals in the competitive range and render a new Source Selection Decision [("SSD")], performing a new tradeoff analysis and assigning each factor the appropriate weight in accordance with this court's decision." Id. at 204.

## B.  Reevaluation of Proposals

Pursuant to the court's decision, the Source Selection Evaluation Board reevaluated factors 1 and 2 for offerors in the competitive range, and the SSA issued a new SSD.  AR 4858. The SSA summarized the offerors' final ratings as follows:

|  | L3 Doss | [. . .] | S3 | CAE |
|---|---|---|---|---|
| Factor 1 – Technical Capability | [. . .] | [. . .] | [. . .] | [. . .] |
| Factor 2 – Staffing and Management Approach | [. . .] | [. . .] | [. . .] | [. . .] |
| Factor 3 – Past Performance | [. . .] Confidence | [. . .] Confidence | [. . .] Confidence | [. . .] Confidence |
| Factor 4 – Small Business Participation | [. . .] | [. . .] | [. . .] | [. . .] |

Id. at 4861.  The SSA also noted the final proposed and evaluated prices,[3] which remained unchanged since the previous evaluation:

| Offeror | Total Proposed Price | Total Evaluated Price (inclusion of FAR 52.217-8) |
|---|---|---|
| L3 Doss | $[. . .] | $[. . .] |
| [. . .] | $[. . .] | $[. . .] |
| S3 | $[. . .] | $[. . .] |
| CAE | $[. . .] | $96,655,774.45 |

Id.[4]  Ultimately, the SSA concluded that "paying more for the values proposed in CAE's

---

[3]  The SSA concurred with the contracting officer that each of the proposed prices was fair, reasonable, realistic, balanced, and below the independent government cost estimate ("IGCE").  AR 4870.

[4]  The SSD indicates that L3 Doss's total evaluated price, both before and after the corrective action, was $[. . .].  AR 4857, 4861.  Elsewhere, L3 Doss's total evaluated price is listed as $[. . .].  E.g., id. at 4451 (pre-corrective action SSD), 5210 (revised price negotiation memorandum).

proposal is advantageous to the program in the long-run and is consistent with the solicitation." Id. at 4873.  On May 5, 2020, the Agency awarded the contract to CAE.  Id. at 5515.

### C.  CAE's [. . .] Proposal

For both the technical capability factor and staffing factor, evaluators designated strengths, weaknesses, significant weaknesses, deficiencies, and risks.  Id. at 590.  Of particular relevance to plaintiffs' motions for reconsideration is the strength that the Agency awarded to CAE for its proposed approach to [. . .].[5]  In its proposal, CAE stated that if it was required to conduct training flights [. . .], but was unable to do so due to [. . .], it would only bill the Agency for [. . .].  Id. at 1345.  In her SSD, the SSA provided the following evaluation of this billing approach:

> CAE states "[. . .]."  . . .  This benefits the Government since [Performance Work Statement] 5.3.1.3 allows the contractor to be reimbursed for "services up to the level of support approved by the Contracting Officer", not [. . .] as offered here.  This is a [. . .] benefit on [. . .] flying for the Army since the billed rate will be [. . .].

Id. at 4865.

### D.  This Bid Protest

On May 8, 2020, S3 filed the instant bid protest, challenging the Agency's award to CAE.  L3 Doss similarly protested the award on May 15, 2020, and the court consolidated the protests.  The court also granted CAE's motion to intervene in the protest to defend its receipt of the contract.  On October 28, 2020, the court issued a decision granting defendant's and CAE's motions for judgment on the administrative record ("MJARs"), denying plaintiffs' MJARs, and dismissing the case.  The court found error with only one aspect of the Agency's decision:  the award of a strength to CAE for its [. . .] proposal.  The court rejected the "[. . .] benefit" label that the SSA had assigned to the policy, emphasizing that "[t]he record shows no evidence of such [. . .]; instead, the court sees only a very narrow [. . .] policy with unpredictable applicability." MJAR Ruling 21.  Nonetheless, the court concluded that plaintiffs did not demonstrate that the assignment of this strength affected the SSA's best value tradeoff analysis such that they were prejudiced by the error.

On November 2, 2020, both plaintiffs filed motions seeking reconsideration of the court's MJAR Ruling.  The parties fully briefed the motions, and the court heard argument on December 9, 2020.  The motions are now ripe for adjudication.

---

[5]  A "strength" is "an aspect of an offeror's proposal that has merit or exceeds specified performance or capability requirements in a way that will be advantageous to the Government during contract performance."  AR 590.

## II.  DISCUSSION

### A.  Standard of Review

A motion for reconsideration is a request for "extraordinary" relief and is not an avenue for a dissatisfied party to simply relitigate the case.  Caldwell v. United States, 391 F.3d 1226, 1235 (Fed. Cir. 2004); Four Rivers Invs., Inc. v. United States, 78 Fed. Cl. 662, 664 (2007), aff'd, 330 F. App'x 919 (Fed. Cir. 2009) (unpublished table decision); Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 300 (1999), aff'd per curiam, 250 F.3d 762 (Fed. Cir. 2000) (unpublished table decision).  Thus, such a motion generally does not allow a party to raise arguments that it failed to raise previously or reassert arguments that have already been considered.  Four Rivers Invs., 78 Fed. Cl. at 664.  Under Rule 59(a)(1) of the United States Court of Federal Claims, the court "may grant a motion for reconsideration when there has been an intervening change in the controlling law, newly discovered evidence, or a need to correct clear factual or legal error or prevent manifest injustice."  Biery v. United States, 818 F.3d 704, 711 (Fed. Cir. 2016) (quoting Young v. United States, 94 Fed. Cl. 671, 674 (Fed. Cl. 2010).  A decision on a motion for reconsideration is within the discretion of the trial court.  See Entergy Nuclear FitzPatrick, LLC v. United States, 711 F.3d 1382, 1386 (Fed. Cir. 2013) (explaining that a decision on a motion for reconsideration is reviewed on appeal for abuse of discretion).

### B.  The Court Properly Evaluated Competitive Prejudice

Both plaintiffs contend that "the Court applied the incorrect legal standard for competitive prejudice" by failing to recognize that "prejudice is presumed when a protester has established irrational agency action."[6]  L3 Doss Mot. 2-3; accord S3 Mot. 9-10.  Defendant and CAE maintain that "the Court must determine whether there was a 'substantial chance' that the protestor would have received the contract award but for the error in question," and that the court properly applied this standard in this case.  CAE Resp. 1-2; accord Def. Resp. 4-5.

The "presumption of prejudice" advocated by plaintiffs has its roots in Textron, Inc. v.

---

[6]  Defendant and CAE insist that having failed to advocate for the "presumption of prejudice" standard during MJAR briefing, both plaintiffs have waived this argument.  Def. Resp. 3-4; CAE Resp. 11-13.  Normally, the court would agree.  "[A]n argument made for the first time in a motion for reconsideration comes too late, and is ordinarily deemed waived and not preserved for appeal."  Bluebonnet Sav. Bank, F.S.B. v. United States, 466 F.3d 1349, 1361 (Fed. Cir. 2006).  The phrase "presumption of prejudice," or any similar phrase denoting the same concept, does not appear in the parties' MJAR briefing.  Moreover, a thorough review of the MJAR briefing demonstrates that both plaintiffs actively embraced the "substantial chance" standard.  L3 Doss MJAR 2, 7, 9; L3 Doss MJAR Reply 3, 15, 19, 24; S3 MJAR 36-37; S3 MJAR Reply 19.  Nevertheless, given the gravity of the court's responsibility to apply proper legal standards, the court will exercise its discretion and consider plaintiffs' assertions.  See Wi-LAN USA, Inc. v. Apple Inc., 830 F.3d 1374, 1385 (Fed. Cir. 2016) (holding that the trial court properly exercised its discretion in considering an argument raised for the first time in a motion for reconsideration).

United States, 74 Fed. Cl. 277 (2006).  In that decision, the court described the origin of the substantive prejudice requirement and how it had become intertwined with the prejudice that must be shown to establish standing.  Id. at 327-29.  It observed that the United States Court of Appeals for the Federal Circuit ("Federal Circuit") "originally restricted a showing of substantive prejudice to the requirement of showing a clear and prejudicial violation of a procurement statute or regulation."  Id. at 327 (citing CACI Field Servs., Inc. v. United States, 854 F.2d 464 (Fed. Cir. 1988)); accord Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332-33 (Fed. Cir. 2001).  It then remarked:

> The term "prejudice" in the context of bid protests[] has been confused in defining both standing and prejudice on the merits with the requirement that the protestor must show "some significant error in the procurement process, but also that there was a substantial chance it would have received the contract award."  Statistica, Inc. v. Christopher, 102 F.3d 1577, 1581 (Fed. Cir. 1996) . . . .  This formulation conflates the relative importance of the procurement error with the standing requirement set forth as early as 1983 in CACI, Inc.-Fed. v. United States, 719 F.2d 1567, 1574-75 (Fed. Cir. 1983).

74 Fed. Cl. at 327.  Ultimately, the court suggested

> that any prejudicial error in the procurement process sufficient to upset an award must be significant to the overall decision to award the contract to the apparent awardee.  When the court finds a violation of an applicable procurement regulation, the court should determine as a factual matter that the protestor has been prejudiced.  This court proposes that the prejudice analysis should not focus on whether the protestor had a "substantial chance" of receiving the award because it had a fully compliant proposal, but, rather, whether the procurement violation was significant to the protestor's chance of being awarded the contract.  This prejudice analysis, however, should be reached only when the protestor has shown violation of an applicable procurement regulation.  If the court finds that the Government has acted arbitrarily and capriciously, the analysis stops at that finding.  There should be no need to continue to prejudice, because a finding that the Government has acted arbitrarily and capriciously necessarily invalidates the procurement, and the court must enjoin the procurement award or enjoin performance under an award already made, and the court also may enjoin award to any proposer than the protestor.

Id. at 329 (footnote omitted).

The court in Caddell Construction Co. v. United States applied the "presumption of prejudice" standard articulated in Textron.  125 Fed. Cl. 30, 50-51 (2016).  It observed that the procuring agency "acted arbitrarily and capriciously in misleading [the awardee] about its pricing and awarding the contract based on misinformed pricing—the award price was based upon error, not a legitimate process, rendering award invalid."  Id. at 51.  "[G]iven the nature of this error," the court concluded that "prejudice should be presumed."  Id.  The court further concluded that

the protestor established prejudice "stemming from the [procuring agency's] irrational conduct of [the] procurement" even if prejudice was not presumed. Id.; see also HVF W., LLC v. United States, 146 Fed. Cl. 314, 338-39 (2019) (holding that even if prejudice was not presumed, the protestor established prejudice), appeals docketed, Nos. 20-1414 (Fed. Cir. Jan. 30, 2020), 20-1583 (Mar. 18, 2020); Citizant, Inc. v. United States, 142 Fed. Cl. 260, 273-74 (2019) (same).

The "presumption of prejudice" standard was also addressed in Fluor Intercontinental, Inc. v. United States, 147 Fed. Cl. 309, 337-38 (2020), appeal dismissed, No. 20-1615 (Fed. Cir. Apr. 24, 2020). In that case, the court concluded that the procuring agency "failed to properly conduct a price reasonableness determination in accordance with both FAR 15.404-1 and the terms of the Solicitation" and, relying on the analyses in Textron and Caddell Construction, determined that it would apply "a different test [for prejudice] depending on whether the procurement violated a regulation or the [procuring agency] arbitrarily and capriciously violated the terms of the Solicitation." Id. at 337. It held that failure to comply with the solicitation was presumptively prejudicial and that the violation of the FAR "directly affect[ed the protestor's] chance of being awarded certain contracts" such that the protestor was prejudiced. Id. at 337-38.

As reflected in these decisions, in a situation where a procuring agency has acted irrationally, a presumption of prejudice would apply only when that irrational action actually affected the protestor's ability to be awarded the contract. See Caddell Constr., 125 Fed. Cl. at 51. In other words, "the protestor bears the burden of proving that a significant error marred the procurement in question." Glenn Def. Marine (ASIA), PTE Ltd. v. United States, 720 F.3d 901, 907 (Fed. Cir. 2013) (emphasis added). This approach is consistent with the mandate of the Administrative Procedure Act ("APA") that "due account shall be taken of the rule of prejudicial error," 5 U.S.C. § 706, an inquiry that applies the "same kind of 'harmless-error' rule that courts ordinarily apply in civil cases." Wellpoint Mil. Care Corp. v. United States, 953 F.3d 1373, 1380 (Fed. Cir. 2020) (quoting Shinseki v. Sanders, 556 U.S. 396, 406 (2009)); accord Am. Relocation Connections, LLC v. United States, 789 F. App'x 221, 228 (Fed. Cir. 2019). "The factors that inform a reviewing court's 'harmless-error' determination are various, potentially including, among other case-specific factors, an estimation of the likelihood that the result would have been different [and] an awareness of what body . . . has the authority to reach that result." Wellpoint, 953 F.3d at 1380 (quoting Sanders, 556 U.S. at 411). The analysis the court conducted in its MJAR Ruling is fully consistent with this precedent.[7] The error identified by the court neither undercut the integrity of the Agency's procurement process nor harmed plaintiffs' chances of being awarded the contract.

_____

[7] The outcomes in HVF and Citizant are consistent as well. In both cases, the court carefully explained the significance of the errors it observed in the procurement process. HVF, 146 Fed. Cl. at 338-39 (emphasizing that the awardee was ineligible for award and that the other two bidders were also possibly ineligible for award); Citizant, 142 Fed. Cl. at 274 (emphasizing that (1) the protestor was not unequivocally disqualified from receiving award, (2) the protestor established errors that would result in the removal of a certain number of awardees, and (3) the contracting officer would be required to reevaluate a significant number of the awardees' proposals).

In their articulation of a "presumption of prejudice" standard, plaintiffs overlook not only the requirement that an agency error go to the heart of the procurement process, but the deference inherent in the Federal Circuit's approach to procurement decisions that allegedly lack a rational basis. In such cases, "the test for reviewing courts is to determine whether 'the contracting agency provided a coherent and reasonable explanation of its exercise of discretion,' and the 'disappointed bidder bears a heavy burden of showing that the award decision had no rational basis.'" Impresa, 238 F.3d at 1332-33 (quoting Latecoere Int'l, Inc. v. U.S. Dep't of the Navy, 19 F.3d 1342, 1356 (11th Cir. 1994); Saratoga Dev. Corp. v. United States, 21 F.3d 445, 456 (D.C. Cir. 1994)). And where, as here, the protest involves a negotiated "best value" procurement, "the protestor's burden of proving that the award was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law is greater than in other types of bid protests." Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1330 (Fed. Cir. 2004). This guidance is not consistent with a presumption that any irrational choice within a procurement is fatal. Even if a protestor demonstrates that an SSA faltered on a single strength, that protestor has not automatically demonstrated that the "award decision had no rational basis." Impresa, 238 F.3d at 1333 (quoting Saratoga Dev. Corp., 21 F.3d at 456) (emphasis added). In this case, the court concluded that the improper assignment of a strength to CAE did not impact the SSA's best value tradeoff analysis and award decision. Consequently, a "presumption of prejudice" did not apply.

### C. The Court Properly Determined That the Agency's Erroneous Assignment of a Strength to CAE Did Not Prejudice Plaintiffs

Independent of their arguments regarding the proper legal standard, plaintiffs also allege that the court inappropriately substituted its judgment for that of the SSA when it determined that the erroneous strength assigned to CAE would not have affected the best value tradeoff analysis and award decision.

As plaintiffs warn, the court "should not substitute its judgment for that of the agency, but should review the basis for the agency decision to determine if it was legally permissible, reasonable, and supported by the facts." Career Training Concepts, Inc. v. United States, 83 Fed. Cl. 215, 221 (2008) (citing Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co., 463 U.S. 29, 43 (1983)). "If the court finds a reasonable basis for the agency's decision, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion . . . ." Id. (quoting Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989). Even so, these principles "do[] not invariably require a remand to the agency whenever a court holds that the agency's action was based on legally improper grounds." Oracle Am., Inc. v. United States, 975 F.3d 1279, 1290 (Fed. Cir. 2020). The court may still affirm an agency's decision, on different grounds than those offered by the agency,

> when the error in question "clearly had no bearing on the procedure used or the substance of decision reached," Mass. Trs. of E. Gas & Fuel Assocs. v. United States, 377 U.S. 235, 248 (1964); if there is no reason to believe that the decision would have been different, In re Watts, 354 F.3d 1362, 1370 (Fed. Cir. 2004); if it is clear that the agency would have reached the same result, Fleshman v. West,

-8-

138 F.3d 1429, 1433 (Fed. Cir. 1998); if the result is "foreordained," Bethlehem
Steel Corp. v. Gorsuch, 742 F.2d 1028, 1036 (7th Cir. 1984); if the court is "not in
substantial doubt whether the administrative agency would have made the same
ultimate finding with the erroneous finding removed," Kurzon v. U.S. Postal
Serv., 539 F.2d 788, 796 (1st Cir. 1976); or where there is no "significant chance
that but for the error, the agency might have reached a different result," NLRB v.
Am. Geri-Care, Inc., 697 F.2d 56, 64 (2d Cir. 1982).

Id. at 1291; see also AFGE Local 3599 v. EEOC, 920 F.3d 794, 799 (Fed. Cir. 2019) (indicating
that a court may "uphold a decision of less than ideal clarity if the agency's path forward may
reasonably be discerned" (quoting Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc., 419
U.S. 281, 286 (1974))).

In assessing plaintiffs' contentions, two features of the source selection process are worth
underscoring. First, the unpredictability of CAE's [. . .] policy was candidly acknowledged.[8]  As
the contracting officer representative explained:

> [. . .] are not in the Program of Instruction (POI) at [USAACE]. [. . .] are
> considered to be [. . .].  This means that the contractor would primarily provide
> instructors [. . .].  [. . .] provides a [. . .] capability.  Some months have passed
> with no [. . .] flying and some months have gone with every [. . .] flying [. . .]
> days.  It is difficult to provide a set, or even an average, number of [. . .] days per
> year.  Regardless, the offer of only [. . .] is a financial benefit to the government.

AR 4834.  In light of this uncertainty, the SSA erred when she called the proposal a "[. . .]
benefit on [. . .]."  Id. at 4865.  Critically, however, the record does not suggest that the Agency
misunderstood the reality of how CAE's [. . .] strength would be applied.

Second, the SSA's detailed price comparison completely disregards any potential savings
from CAE's [. . .] method:

> CAE's proposed price is not "so [. . .] high as to diminish the value to the
> Government that may be gained under other aspects of the offer."  While CAE
> proposed the highest total evaluated price (TEP), CAE's TEP is below the IGCE
> and is only $[. . .] or [. . .]% higher than S3's TEP.  This amounts to
> approximately $[. . .] more per month over the phase-in, base, 6 option years, and
> an optional 6-month extension (approximately 90 months), in comparison to S3's

---

[8]  Plaintiffs make much of an earlier e-mail exchange in which Agency personnel
theorized:  "The [. . .] [price premium] over the 7 year period could be made up because CAE
has offered to [. . .]."  AR 4823.  If this predecisional speculation had influenced the SSA, the
court would expect to see it considered in her tradeoff analysis.  But on the contrary, her
thorough justification of CAE's price premium provides no indication that she expected that
[. . .] million to be wiped out (or even minimized) by CAE's [. . .] policy.  See id. at 4870-73.

TEP monthly cost.  For this relatively [. . .] difference in price, the Government will realize [. . .] benefits including the [. . .] unique strengths discussed above and an additional proposed [. . .].

> . . . .

> Accordingly, my decision is the award will be made to CAE in the amount of $[. . .] for the phase-in period, base period and six year options.

Id. at 4872-73.  The SSA calculated precisely how much more the Agency would have to pay for CAE – not just per year, but per month.  With her eyes wide open, fully aware of each offerors' price and the practical realities of their billing practices, she stated that the Agency was willing to pay $[. . .] for CAE's services.[9]  The court takes her at her word.

"[I]n various administrative law contexts, the Supreme Court has 'warned against courts[] determining whether an error is harmless through the use of mandatory presumptions and rigid rules rather than case-specific application of judgment, based upon examination of the record." Electronic Data Sys., LLC v. United States, 93 Fed. Cl. 416, 437 n.25 (quoting Sanders, 556 U.S. at 407).  For this reason, the court will not automatically conclude that the erroneous [. . .] strength was prejudicially significant simply because the SSA mentioned it.  See Wellpoint, 953 F.3d at 1381 ("Even if the [technical evaluation team's] error had been carried over to the SSA's decision, [the protestor] has not demonstrated that the SSA's decision would have been different.").  Instead, as counsel for defendant phrased it during oral argument, "there is clearly a role for the Court to apply some level of analysis and logic in the prejudice determination." Tr. 27.  The court has done just that.  A best value tradeoff requires the SSA to balance two components:  (1) the quality of service she desires and (2) the price she is willing to pay.  Serco Inc. v. United States, 81 Fed. Cl. 463, 496 (2008).  In terms of the quality of service proposed by the respective offerors, invalidation of the [. . .] strength has no impact.  The obviously high value that the SSA placed on CAE's [. . .] will still be realized.  See AR 156 ("The ability to [. . .] staff qualified personnel is critical to the accomplishment of the mission.  If the contractor's instructor pilot trainer and management staff is [. . .], either due to [. . .], the quality and validity of the service will be [. . .]."), 4864 (noting that "[. . .]" and that "CAE proposes manning levels [. . .]% to [. . .]% [. . .] than the number of [. . .] the Government estimated [. . .] manning requirements"), 4872 (emphasizing that "the Government will realize [. . .] benefits" from, among other advantages, CAE's [. . .] additional [. . .]).  As for price, the SSA thoroughly justified her choice, discussing CAE's price premium in minute detail with no reference to how the [. . .] policy might mitigate it.[10]  These business judgments form the core of a best value

---

[9]  Significantly, CAE's proposed price was [. . .]% lower than the IGCE, AR 4870, 5224, and neither plaintiff challenges the reasonableness of the IGCE.

[10]  In fact, provided there are a [. . .] over the life of the contract, CAE's [. . .] policy likely will [. . .] the Agency [. . .] money.  As CAE noted during oral argument, "the Court correctly found that [the [. . .] policy] was an actual [. . .] benefit of CAE's proposal but would not result in a [. . .].  So it wasn't as if the Army credited CAE for something wild that it didn't

tradeoff, and the court's decision leaves them undisturbed.

Oral argument in this matter highlighted a key incongruity between the court's MJAR Ruling and plaintiffs' perception of the [. . .] strength. L3 Doss called the [. . .] strength a "technical discriminator that differentiated CAE from the other offerors . . . ." Tr. 7-8; see also id. at 6 (describing the [. . .] strength as "a technical discriminator that offset CAE's price premium"). L3 Doss also posited that removal of the strength could lead to a "reduction of the technical [g]ap between the offerors." Id. at 12. S3, for its part, urged the court to "view the tradeoff analysis in the award decision as a unitary thing," id. at 22, cautioning that the court may not "divide" or differentiate between CAE's strengths, id. at 64. In almost any other protest, plaintiffs would be correct. Typically, agencies use strengths to categorize a proposal's "technical benefits" or "non-cost factors." Serco, 81 Fed. Cl. at 497; see, e.g., Kiewit Infrastructure W. Co. v. United States, 137 Fed. Cl. 689, 695 (2018) (strength assigned "based on [the offeror's] prior experience working on a dewatering project with a partial reservoir pool"); Mil-Mar Century Corp. v. United States, 111 Fed. Cl. 508, 528 (2013) (strength assigned for offeror's "experience supplying systems that are collectively very comparable to [that used by the agency], involving essentially the same scope and magnitude of effort and level of complexity as required by this solicitation"); IBM Corp. v. United States, 101 Fed. Cl. 746, 753 (2011) (strength assigned for a "mentor-protégé agreement with a proposed small business subcontractor"). Such strengths would certainly act as "technical discriminators" between offerors, and differentiating between them would be precarious.

This protest is different. Plaintiffs overlook the significance of a distinction the court made in its MJAR Ruling: "Unlike the other strengths awarded to the offerors, CAE's [. . .] strength was based on cost rather than any quality that 'exceeds specified performance or capability requirements.'" MJAR Ruling 26 (quoting AR 590). Had the court invalidated a CAE strength related to the quality of service it offered (its [. . .], for instance), the court likely would have reached a different conclusion regarding the propriety of the SSA's tradeoff analysis. The court cannot say with any certainty precisely how much the Agency valued each of these "qualitative" strengths; if it had tried, plaintiffs' assertions that the court improperly substituted its judgment for that of the Agency would likely have been valid. The value of the [. . .] strength, in contrast, is much easier to objectively ascertain.[11]

---

propose." Tr. 37. The error in the SSA's language was one of degree only.

[11]  The caselaw upon which S3 relies that describes instances of flawed best value tradeoff analysis does not adequately address this distinction. See S3 Mot. 8. In BayFirst Sols., LLC v. United States, the court found two "significant errors" in the agency's tradeoff analysis: (1) the SSA weighed the evaluation factors using a different scheme than that set forth in the solicitation and (2) "many, if not most, of the evaluation ratings assigned to [the offerors'] proposals were irrational." 102 Fed. Cl. 677, 694 (2012). The court easily concluded that but for this "fundamentally flawed source selection process," the protestor would have had a substantial chance of award. Id. at 695. A similarly unsalvageable procurement was before the court in Huntsville Times Co. v. United States, 98 Fed. Cl. 100 (2011). There, the court found

Plaintiffs rely on a number of decisions regarding the dangers of a court substituting its judgment for that of an agency, but these decisions are inapposite.  See L3 Doss Mot. 3-4; S3 Mot. 6-7.  Shields Enterprises, Inc. v. United States dealt with a "technical assessment of the merits of a plaintiff's proposal submitted in response to [a request for proposals ("RFP")]"—more specifically, whether the agency applied evaluation criteria not specified in the RFP and whether the agency properly canceled the RFP.  28 Fed. Cl. 615, 617, 632-33 (1993).  In Career Training Concepts, Inc., the court considered whether the agency properly drew a distinction between two offerors' plans for hiring and vetting personnel.  83 Fed. Cl. at 231-32.  In Patriot Taxiway Indus., Inc. v. United States, the protestor disputed its rating for a previous contract, essentially "asking the Court to step into the shoes of the [agency] evaluators and assess past and present performance."  98 Fed. Cl. 575, 586 (2011).  And in Voith Hydro, Inc. v. United States, the court declined to supplement the administrative record with the disappointed bidder's expert report, noting that by doing so the court "would be introducing a new requirement, rewriting the RFP, and impermissibly substituting its judgment for that of the agency as to how to measure the relative merits of the submitted proposals."  142 Fed Cl. 233, 237 (2019).  These decisions all involve fundamental changes to the agency's technical assessments or to its evaluation criteria.  The instant case requires no similar interference.

Perhaps bid protest jurisprudence would look different if ordering an agency to reevaluate proposals and issue new SSDs were a costless, academic exercise.  But the court does not view these legal issues in a vacuum, ignorant of the practical challenges an agency faces.  Congress asks the court to "give due regard to the interests of national defense and national security and the need for expeditious resolution of [bid protests]."  28 U.S.C. § 1491(b)(3).  This concern has shaped the court's approach to matters ranging from injunctive relief to patent ambiguities in solicitations.  See Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308, 1313 (Fed. Cir. 2007) (emphasizing that "[r]ecognition of a waiver rule, which requires that a party object to solicitation terms during the bidding process, furthers [the § 1491(b)(3)] statutory mandate"); Textron, 74 Fed. Cl. at 331 (noting that when considering whether an injunction would be in the public interest, "the court must consider matters of national defense and national security in providing relief").  Although the court is convinced that the Agency's error in this case did not render the SSA's best value tradeoff analysis and award decision irrational as a purely legal matter, these public policy concerns offer further support for its holding.

The court has made a "searching and careful" examination of the record, Co-Steel

_____

(1) procedural errors in establishing the [source selection plan]; (2) a confusing and internally inconsistent [source selection plan]; (3) ratings that were based on evaluation criteria different from those stated in the [letter request for proposal]; (4) ratings that were irrational or were in violation of the governing regulation; and (5) a failure to apply the weighting scheme for evaluation criteria set forth in the [letter request for proposal].

Id. at 120; see id. at 110 (calling the diverging sets of evaluation criteria "disturbing"). Unsurprisingly, the court concluded that these errors prejudiced the protestor.  Id. at 120-21.

Raritan, Inc. v. Int'l Trade Comm'n, 357 F.3d 1294, 1309 (Fed. Cir. 2004) (quoting Citizens of Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99 (1977)), and its holding rests on narrow, precise grounds.  Because the court is "not in substantial doubt whether the administrative agency would have made the same ultimate finding with the erroneous finding removed," Oracle, 975 F.3d at 1291, it determines that plaintiffs were not prejudiced by the erroneous strength awarded to CAE's [. . .] proposal.

## D.  The Court Will Not Consider the SSA's Declaration

Lastly, the court turns to the SSA's declaration, which was submitted by defendant with its response to plaintiffs' motions for reconsideration.  In this declaration, the SSA briefly reevaluates her SSD in light of the court's MJAR Ruling.  Def. Ex. 1 at 2.  She states that having "reviewed [her] decision without assessing CAE a strength for its [. . .] approach," she "notionally determined that CAE's proposal still will provide the best value to the government." Id.  She thus concludes that "even if the Court were to grant the motions for reconsideration and require that [she] conduct a re-evaluation of the proposals to correct for the aforementioned error that the Court identified, it would not make any difference in [her] decision to make the award to CAE."  Id.  Defendant urges the court to consider this evidence when making its factual findings regarding the prejudicial effect of the procurement error.  Def. Resp. 6.  Plaintiffs disagree, calling the declaration "a perfect example of the type of post hoc assertions the Court has repeatedly cautioned against accepting because it contradicts the contemporaneous evaluation record."  L3 Doss Reply 4; see also S3 Reply 9 ("If the SSA decides that CAE is still the best value, . . . she should have to justify it with a proper, formal tradeoff analysis, not a declaration submitted in the heat of litigation.").

In a bid protest, the court may allow parties to supplement the administrative record "only if the existing record is insufficient to permit meaningful review consistent with the APA." Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374, 1381 (Fed. Cir. 2009); accord Raytheon Co. v. United States, 121 Fed. Cl. 135, 153-54 (2015), aff'd, 809 F.3d 590 (Fed. Cir. 2015).  The court must be wary of "post-hoc rationale," or "any rationale that departs from the rationale provided at the time the procuring agency made its decision."  Raytheon Co., 121 Fed. Cl. at 158.  In contrast to "[d]ocuments that pre-date or are contemporaneous with the relevant decision," "[t]hose created after-the-fact are suspect, as courts . . . recognize that they must reject 'post hoc rationalizations' as a basis for the agency action."  Arch Chems., Inc. v. United States, 64 Fed. Cl. 380, 386 (2005).

As defendant emphasizes, Def. Resp. 6, supplementation may be appropriate "when making a prejudice analysis in the first instance," which requires the court to "make factual findings from the record evidence as if it were conducting a trial on the record."  Bannum, Inc. v. United States, 404 F.3d 1346, 1353-54 (Fed. Cir. 2005).  But this path is much more narrow than defendant acknowledges.  As this court discussed in Raytheon Co., supplementation under these circumstances has most commonly involved affidavits or declarations from parties protesting an agency's decision, rather than from the agency itself.  121 Fed. Cl. at 153-54.  In Gentex Corp. v. United States, for instance, a protestor sought to introduce affidavits from its vice president and general manager, explaining, among other matters, "how [the protestor] would have changed its

proposal were it not for the [agency's] illegal actions." 58 Fed. Cl. 634, 649 (2003). The court concluded that "[s]uch an attempt to show prejudice is . . . an appropriate basis for supplementing the record." Id. Similarly, in North Carolina Business Enterprise Program v. United States, the court accepted a protestor's affidavit that explained how the solicitation at issue "require[d] plaintiffs to submit an offer that appears higher than it would but for the [agency's] alleged errors." 110 Fed. Cl. 354, 365 (2013). Noting that the affidavit addressed plaintiffs' alleged competitive injury, the court drew an important distinction: "This evidence does not concern any decision before the [Agency], but rather concerns the effect of those decisions on plaintiffs." Id.

Decisions like these acknowledge that "a bid protester's entitlement to relief may often turn on considerations of injury that spring from the challenged actions, and to that extent could not be reflected in the agency record underlying those actions." E.W., Inc. v. United States, 100 Fed. Cl. 53, 57 (2011); see also AshBritt, Inc. v. United States, 87 Fed. Cl. 344, 367 (2009) ("Evidence directed at prejudice and remedy necessarily would not be before an agency decisionmaker effecting a procurement decision such as a source selection award . . . [but] would necessarily post date and flow from such agency decision."). The SSA's declaration, however, is not intended to fill this critical gap. Instead, the declaration amounts to precisely the kind of "post hoc rationalization[]," "created in the heat of litigation," that the court has warned of in cases such as Fluor Intercontinental, 147 Fed. Cl. at 334. The court declines to incorporate the declaration into its analysis.

## III.  CONCLUSION

The court has considered all of the parties' arguments; to the extent not discussed herein, they are unpersuasive, without merit, or unnecessary for resolving the issues currently before the court.

For the reasons discussed above, the court **DENIES** plaintiffs' motions for reconsideration. Further, the court's ruling on these motions for reconsideration is also dispositive of L3 Doss's subsequent motion requesting injunctive relief pending the issuance of this order. L3 Doss's motion for injunctive relief, filed December 11, 2020, and in which S3 joins, is **DENIED** as moot.

Because the court has filed this ruling under seal, the parties shall confer to determine agreed-to proposed redactions. Then, by **no later than Friday, January 8, 2021**, the parties shall file a joint status report indicating their agreement with the proposed redactions, **attaching a copy of those pages of the court's ruling containing proposed redactions, with all proposed redactions clearly indicated.**

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Senior Judge